## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jason Costello, being sworn, state:

**Introduction and Agent Background**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I joined the FBI in July 2004. From December 2004 through July 2010, I was assigned to the Violent Crimes Task Force of the FBI's Boston Division at Boston, Massachusetts. Since August 2010, I have been assigned to the Organized Crime Task Force of the FBI's Boston Division. My responsibilities include the investigation of possible violations of federal law, including, but not limited to, those involving access device fraud and its related activities. My investigations have included the use of surveillance techniques and the execution of search, seizure, and arrest warrants.

2. In addition to my 17 weeks of basic investigative training at the FBI Academy in Quantico, Virginia, I have received training on investigating technology-based and cyber-based crimes. I have participated in yearly computer-based training on basic cybercrime topics and basic cellular technology exploitation; attended in-service trainings on advanced cellular technology exploitation; attended both domestic and international conferences on Balkan-based organized crime and the various technology-based and cyber-based crimes attributable to those groups, including ATM skimming; and participated in various working groups aimed at developing strategies to combat such crimes.

3. I am investigating Alexandre Kawamura ("KAWAMURA"), Karem Shelida Lima Kawamura, date of birth xx/xx/92 ("KAREM"), and others for Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2).

4. I am submitting this affidavit in support of a search warrant for Room 204 at the Extended Stay America, 831 Main Street in Woburn, Massachusetts.

5. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**Background**

6. ATM skimming is described as surreptitiously obtaining the debit card numbers and corresponding personal identification numbers (PINs) of unsuspecting bank customers using an ATM and thereafter making unauthorized withdrawals from those customers' accounts.

7. ATM skimming typically takes place in three stages. In the first stage, the fraudsters acquire the account information and PINs of customers' accounts through the use of "skimming devices." Skimming devices often consist of two parts, one to record the account information contained in the magnetic strip of a card and the other to record the user's PIN. The former is made to look like a legitimate card access slot and does not interfere with the card access functions. The latter is usually a separate pinhole camera device that is discreetly hidden on the ATM or near it in a location from which the customer's input on the ATM keyboard can be observed. Each piece of information is stored on the separate part that recorded it; the information is typically downloaded to a computer and combined. Such "skimming devices" constitute device-making equipment. *See* 18 U.S.C. § 1029(e)(6).

8. In the second stage, the fraudsters create "cloned cards" by encoding the customer account information obtained by the skimming device onto blank plastic cards such as gift cards or hotel key cards. To obtain the corresponding PIN for each stolen account, the video from the

pinhole camera must be viewed to see the account holder enter the PIN digits on the ATM keypad.

9. In the third stage, the fraudsters use the cloned cards and the account owners' PINs to withdraw money, typically the maximum withdrawal amount, from the account owners' accounts. This stage is also known as "cashing out."

10. Fraudsters who use battery-powered ATM skimmers and/or pinhole cameras must periodically remove and replace them. The time period for replacement is often within 24 hours, depending on the life of the battery.

11. Fraudsters engaged in ATM skimming often possess or have ready access to equipment such as skimming devices (card reader devices and pinhole camera devices), basic electrical tools to test and repair them, batteries, double-sided tape, laptop computers, magnetic card reader-writer-encoders, and blank plastic cards.

## PROBABLE CAUSE

### The Investigation

12. The FBI is conducting a criminal investigation into an ATM skimming operation in eastern Massachusetts that began no later than February 24, 2018.

13. One suspect, KAWAMURA, is currently in state custody. KAWAMURA has been charged by criminal complaint with Possession of Device-Making Equipment, in violation of 18 U.S.C. § 1029(a)(4). *United States v. Kawamura*, No. 18-MJ-2197-MBB (D. Mass.).

14. KAWAMURA and KAREM, who have the same last name, are Brazilian citizens who lawfully entered the United States together on tourist visas in November 2017.

15. I am familiar with KAWAMURA's appearance both from his visa application photograph and from the booking photograph from his March 16, 2018 arrest, described below.

16.     I am familiar with KAREM's appearance both from her visa application photograph and from the photograph taken by U.S. Customs and Border Protection upon her arrival in the United States.

### *The Saugus ATM*

17.     Shortly after 4:00 p.m. on March 1, 2018, staff at the Eastern Bank branch location at 605 Broadway in Saugus contacted the Saugus Police Department to report the discovery of a suspected skimming device attached to the card access slot of the bank's drive-up ATM (the "Saugus ATM"). Saugus Police detectives responded and removed the suspected skimming device. Eastern Bank disabled the Saugus ATM pending further investigation. Saugus Police detectives contacted me to report the discovery and removal of the suspected skimming device.

18.     I viewed the device and determined, based on my familiarity with skimming devices from prior investigations, my training, and my conversations with other investigators familiar with such devices, that it was, in fact, the card reader portion of a skimming device. The device had been attached to the Saugus ATM with double-sided tape, was painted and shaped to blend into the ATM's legitimate card access slot in order to avoid detection, appeared to have a card reader component, and had an attachment point for a computer cable commonly used to both charge and download stolen data stored on such a device.

19.     I went to the Saugus ATM at approximately 8:00 pm on March 1, 2018, to search for the pinhole camera portion of the skimming device. I did not find it. I did, however, observe what appeared to be recent scratches in the ATM's paint in or near a slightly recessed rectangular area that ran across the top of the ATM. I compared my findings to photographs of the ATM taken by Saugus Police detectives earlier in the day. The photographs showed this rectangular

area to be protruding, rather than recessed. Based on my familiarity with skimming devices, it is my belief that this protrusion in the photographs was the pinhole camera portion of the skimming device, having been designed to blend into the façade of the ATM, positioned above the ATM's PIN pad, and likely attached with double-sided tape. I believe that the fraudster returned to the Saugus ATM and removed the camera portion of the skimming device sometime between the recovery of the card reader portion by Saugus Police and my arrival.

20. Eastern Bank corporate security personnel reviewed the Saugus ATM's security video for March 1, 2018. The video shows that, at approximately 6:18 p.m., a vehicle operated by a man matching KAWAMURA's appearance pulled up to the ATM. A woman who matches KAREM's appearance was in the front passenger seat. The man looked at the ATM and on the ground below the ATM as if searching for something. He then held up a smartphone and appeared to take a picture of the ATM and departed. The man returned to the ATM approximately 40 minutes later. He appeared to be alone in the vehicle. The man reached up and used a butter knife to remove an object from the upper portion of the ATM where I observed scratches a short time later. The object that the man removed was consistent in size with this rectangular area and appeared to be the pinhole camera portion of the skimming device.

21. A more extensive review of the Saugus ATM's security video and transaction logs shows that the man appeared to install both the card reader portion and the pinhole camera portion of a skimming device on the Saugus ATM on February 24, 2018. The man returned at least once per day on each subsequent day through March 1, 2018, and appeared to either check on the skimming device or switch out the card reader portion and/or the pinhole camera portion

of the device.[1] On several of these visits, the man wore a distinctive green baseball cap with two black chevrons. On many of these occasions the man inserted the same debit or credit card into the ATM, as indicated by corresponding transaction logs. From my training and experience, fraudsters often insert a card after installing a skimming device to ensure that the device is installed properly and does not interfere with the normal functioning of the ATM. A secondary purpose is to aid in the pairing of stolen card data with PINs observed by the camera device, as the fraudster will enter a "dummy" PIN to go along with the card entry now captured on the skimming device. Investigators sometimes refer to this as using a synchronization or "synch" card. Often synch cards are previously cloned cards.

### *The Stoneham ATM*

22.  At approximately 7:40 p.m. on March 16, 2018, a bank customer called Stoneham Police to report that he had found and removed a suspected skimming device from the drive-up ATM located at the Eastern Bank branch at 163 Main Street in Stoneham (the "Stoneham ATM"). Stoneham Police responded, took custody of the device, and contacted Eastern Bank staff. Eastern Bank disabled the ATM pending further investigation.

23.  Eastern Bank corporate security personnel notified me of the suspected skimming device. Based on Stoneham Police photographs of the device, it appeared identical to the card reader portion of the skimming device found on the Saugus ATM. As with the Saugus incident, the pinhole camera portion of the skimming device had not been detected or recovered by bank

---

[1] Skimming devices are limited by both battery life and data storage capacity. Fraudsters will sometimes install and remove devices from an ATM in a single day, download and recharge them, and then redeploy them the next day. Fraudsters with multiple sets of devices will sometimes remove a device and install a fresh one at the same time, keeping the skimming operation going continuously.

staff or detectives. I asked Stoneham Police to return to the Stoneham ATM and look for the pinhole camera portion of the skimming device. Soon thereafter Stoneham Police located the pinhole camera still attached to the Stoneham ATM.

24. Stoneham Police then set up surveillance of the Stoneham ATM while Eastern Bank security personnel monitored the ATM's security video. At approximately 10:45 p.m., police observed a blue Kia Optima bearing New Jersey license plate E69HYE. The driver appeared to be alone in the car. He was wearing a baseball cap. Eastern Bank corporate security personnel informed Stoneham Police that the driver matched the appearance of the man who had installed and removed skimming devices at the Saugus ATM. The man appeared to look at the Stoneham ATM for the skimming device (which had been removed) and then at the ground below the ATM. The man did not place a card into the ATM as a customer would be expected to. The man then drove away from the ATM and out of the parking lot.

### *KAWAMURA's Arrest*

25. Stoneham Police stopped the car a short distance away. They asked the driver for a license and registration, which he was unable to provide. For identification, the man gave police a Brazilian passport identifying him as Alexandre Kawamura, date of birth xx/xx/1975. The car was a rental vehicle rented under the name "Alex Justo."

26. Stoneham Police arrested KAWAMURA for unlicensed operation of a motor vehicle (and later added larceny charges). Fingerprints taken during booking confirmed KAWAMURA's identity based on his visa used for entry into the United States from Brazil in November 2017. Credit cards located in KAWAMURA's wallet were in his name except for one card in the name of "Alex C. Justo." KAWAMURA was also in possession of a Hyatt Place room key.

27. When he was arrested KAWAMURA was wearing a green baseball cap with two black chevrons, which matches the hat worn by the Saugus ATM suspect. I have compared an arrest photograph of KAWAMURA with the man who was observed on security video installing and removing skimming devices at the Saugus ATM, and they appear to be the same person.

28. Eastern Bank corporate security personnel reviewed the Stoneham ATM's security video. Their review shows a man matching KAWAMURA's appearance installing a skimming device on the Stoneham ATM on March 9, 2018. He returned each subsequent day and appeared to either check on the skimming device or switch out the card reader portion and/or the pinhole camera portion of the device. On March 9, 2018, the man used a "synch card" during installation of the skimming device.

### *The Medford ATM*

29. Eastern Bank determined that the synch card used by KAWAMURA on March 9, 2018, in the Stoneham ATM was used approximately two hours earlier that same day in the drive-up Eastern Bank ATM at 53 Locust Street in Medford (the "Medford ATM"). Review of the Medford ATM security video shows a man matching KAWAMURA's appearance installing a skimming device on the Medford ATM on March 9, 2018, and returning on each subsequent day to either check on the skimming device or switch out the card reader portion and/or the pinhole camera portion of the device.

30. The security video shows that, at approximately 7:23 p.m. on March 15, 2018, the man matching KAWAMURA's appearance returned to the Medford ATM and seemed to visually check on the skimming device. Sitting in the passenger seat was a woman whose appearance matches KAREM's appearance.

31. At approximately 10:41 p.m., the man matching KAWAMURA's appearance returned to the ATM and removed the skimming devices. He appeared to be alone in the vehicle.

### *KAWAMURA and KAREM's Activity at the Hyatt Place Hotel in Medford*

32. The Hyatt Place hotel room key possessed by KAWAMURA at the time of his arrest on March 16, 2018, was found to be coded for room 713 of the Hyatt Place hotel at 116 Riverside Avenue, Medford, Massachusetts.

33. A guest using the name "Alex Justo" had registered at the Hyatt Place on March 8, 2018, and had been assigned room 713. The scheduled check-out date for the room was March 19, 2018. Two room keys were issued, including the one found on KAWAMURA.

34. Hotel surveillance video shows a man whose appearance matches KAWAMURA coming and going to and from the hotel via the parking garage elevator at various times beginning on March 10, 2018.[2] The man's entries to the hotel via the elevator correspond to the hotel's room key access log for room 713. On the video, this man is often accompanied by a woman matching KAREM's appearance.

35. As noted above, on March 15, 2018, at about 7:23 pm, a man matching KAWAMURA's appearance drove up to, and seemed to check on the skimming device on, the Medford ATM, and then drove away. A woman matching KAREM's appearance was in the car. Hyatt Place surveillance video shows a man and woman matching the appearance of KAWAMURA and KAREM entering the hotel at approximately 7:30 pm. The hotel is about one mile from the Medford ATM.

---

[2] The hotel no longer has surveillance video for March 8 or 9 due to routine overwriting every ten days.

36. Stoneham Police obtained a state search warrant to examine the credit cards found on KAWAMURA at the time of his arrest. They determined that the account information encoded on the magnetic strip of the "Alex Justo" credit card did not match the account information for the card number embossed on the front of the card. Instead, the magnetic strip was encoded with Eastern Bank account number xxxxxx4042 belonging to victim J.S. According to Eastern Bank records, J.S. used J.S.'s debit card at the Medford ATM at approximately 8:27 p.m. on March 15, 2018, when the skimming device was still attached to the machine, thereby exposing J.S.'s account information to compromise.

37. According to Eastern Bank records, purchases were made on J.S.'s account at three stores in Medford the next day, March 16, 2018, between 3:49 and 4:26 pm: a CVS, a Dick's Sporting Goods, and a Marshalls. J.S. has told me that J.S. did not make or authorize these purchases.

38. The items bought on J.S.'s account at Dick's Sporting Goods, according to store records, were: Under Armour Women's Fitted Mockneck Shirt (black), Nike Women's Windrunner Jacket, and Under Armour men's black baseball cap.

39. Hyatt Place surveillance video taken on March 16, 2018, shows a couple matching the appearance of KAWAMURA and KAREM enter the hotel at approximately 4:37 p.m., carrying shopping bags from CVS, Dick's Sporting Goods, and Marshalls.

40. When KAWAMURA was arrested later that night on March 16, 2018, he was allowed to make a telephone call from the Stoneham Police station during booking. According to the booking area surveillance video, he placed the call from approximately 12:33 a.m. through 12:41 a.m. on March 17, 2018. He called (737) 202-0925.

41. Surveillance video from the Hyatt Place shows that, approximately a half-hour later, the woman matching KAREM's appearance began moving numerous suitcases and bags to the parking garage. According to the room key access log, room 713 was accessed several times during this period, corresponding to the woman's multiple trips to retrieve suitcases and bags.

42. According to hotel records, no guest went to the front desk to officially check out of room 713. Law enforcement officers entered room 713 on March 19, 2018, and found it vacated.

### *Discovery of KAREM in Room 204 of the Extended Stay America in Woburn*

43. Since his arrest and detention at the Middlesex County Jail, KAWAMURA has made calls only to (737) 202-0925, a cell phone number registered to T-Mobile. The jail records inmate telephone calls. In the calls made by KAWAMURA, he speaks with a female. The calls are in Portuguese and have yet to be translated by a qualified FBI linguist. However, a Portuguese-speaking police officer who has listened to the calls has opined that KAWAMURA and the woman speak as though familiar to each other, as if in a relationship.

44. Based on the foregoing, probable cause exists that the person using the above telephone number is KAREM.

45. Based on the above information, this Court issued a search warrant yesterday to obtain, from T-Mobile, data to find the location of the phone ("ping order"). *In re Information About the Location of a T-Mobile Wireless Phone Assigned Telephone Number (737) 202-0295*, No. 18-mj-2203-MBB (D. Mass.) (signed Mar. 29, 2018).

46. Data obtained from T-Mobile in response to the ping order showed that the phone was at the Extended Stay America hotel in Woburn.

47.     A desk clerk at the hotel has confirmed that the hotel has a guest registered under the name Karem Kawamura staying in room 204. She checked in on March 19, 2018, and her scheduled check-out date is April 17, 2018. April 17 is KAWAMURA's next court date. According to the desk clerk, this guest does not have a vehicle and does not speak English. The guest has repeatedly asked for hotel staff's assistance in calling taxis, and then she asks the staff to help her by speaking with the drivers in English.

## CONCLUSION

48.     Based on the forgoing, I have probable cause to believe that Alexandre Kawamura and Karem Shelida Lima Kawamura have conspired to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2).

49.     Based on the forgoing, I have probable cause to believe that evidence, fruits, and instrumentalities of this crime, as described in Attachment B, are located in the premises described in Attachment A.

Respectfully submitted,

JASON COSTELLO
Special Agent, FBI

Subscribed and sworn to before me on March 30, 2018.

Marianne B. Bowler, UMJ
HON. MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Premises to Be Searched

Room 204 of the Extended Stay America hotel, 831 Main Street, Woburn, MA.

## ATTACHMENT B

### Evidence to Be Searched for and Seized

Evidence, fruits, and instrumentalities of violation of 18 U.S.C. § 1029(b)(2), including but not limited to:

1. Laptops
2. Cell phones
3. Debit, credit, and ATM cards
4. Card-making equipment
5. Card readers-writers-encoders
6. Pinhole cameras
7. Other equipment used for ATM skimming
8. Under Armour Women's Fitted Mockneck Shirt (black)
9. Nike Women's Windrunner Jacket
10. Under Armour men's black baseball cap
11. Shopping bags from Dick's Sporting Goods, CVS, and Marshalls
12. Identification documents (male and female)
13. Travel documents, including for rental cars
14. Bank account documents and bank deposit/withdrawal receipts
15. Documents and information relevant to planning or participation in ATM skimming
16. Documents relevant to coconspirators
17. Receipts for any purchases made in the United States